UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

RALPH F. HOLLEY and
MELONEE L. MONSON,
a/k/a MELONEE MONSON-HOLLEY,   Case No. 12-33873-dof
                                Chapter 7 Proceeding
　　　　　　　　　　Debtors.      Hon. Daniel S. Opperman
_____/

OPINION REGARDING ISSUE OF THE IMPACT ON THE
PAYMENT OF ADMINISTRATIVE FEES WHEN CLAIMS
ADMINISTERED BY THE CHAPTER 7 TRUSTEE ARE SECURED ONLY

Introduction

At a hearing held on February 25, 2015, on various matters, a legal issue was raised by Debtors concerning whether the Chapter 7 Trustee, Collene K. Corcoran ("Trustee"), could pay administrative expenses in this case when funds to pay such were generated from the Trustee's administration of an asset for the benefit of secured creditors only. The Court took that issue under advisement, received numerous post-hearing pleadings, as late as May 5, 2015, and now issues its Opinion on this limited issue.

Background and Facts

This Chapter 7 bankruptcy case was originally filed by Ralph Holley as a non-joint case on September 25, 2012. Melonee Monson-Holley signed the bankruptcy petition as Mr. Holley's attorney. On Schedule A of Mr. Holley's original Schedules, he listed real property located at 7545 Heather Mead Lane, West Bloomfield, Michigan ("Residence"), as owned joint, as having a value of $125,000.00, and with a secured claim of $0.00. Mr. Holley claimed a

1

$125,000.00 exemption on the Residence pursuant to M.C.L.A. § 600.5451(1)(o), listing the value as $250,000.00. No creditors were listed on Schedule D as secured, and on Schedule F, Mr. Holley provided no indication as to whether the unsecured creditors listed, totaling $166,373.00, were joint or non-joint debts. On Schedule F, Mr. Holley listed Christine D'Luge as an unsecured creditor in the amount of $125,000.00, with the consideration for the claim being the Residence.

Less than two months later, Melonee Monson-Holley filed a Chapter 13 case in Seattle, Washington, on November 8, 2012, again as a non-joint case. Ms. Monson-Holley represented herself in this case. Ms. Monson-Holley's original Schedule A, filed on November 20, 2012, listed the Residence, owned as joint, but with a value of $200,000.00, and a secured claim in the amount of $22,000.00. Ms. Monson-Holley claimed a $189,000.00 exemption on the Residence pursuant to M.C.L.A. § 600.5451(1)(o), listing the value of it as $400,000.00, which is $150,000.00 more than the value placed on the Residence by Mr. Holley. Unlike Mr. Holley, Ms. Monson-Holley's Schedule D indicated $22,000.00 in secured claims owing to the Bloomfield Pines Homeowners and the Oakland County Treasurer. Like Mr. Holley, Ms. Monson-Holley listed the D'Luge claim as unsecured on Schedule F in the amount of $125,000.00. While the total amount of unsecured debt was different, $210,148.00, Ms. Monson-Holley also did not indicate whether the unsecured debts were joint on non-joint. Ms. Monson-Holley's proposed Chapter 13 Plan, also filed on November 20, 2012, listed the Christine D'Luge claim as a non-priority unsecured claim in the amount of $125,000.00.

Ms. Monson-Holley's case was transferred to this Court via Order entered on February 21, 2013, and by Order dated June 3, 2013, the cases were jointly administered under the Lead

2

Case No. 12-33873. On June 7, 2013, Debtors amended their Schedules A, B, C, D and F. Amended Schedule A listed the Residence as joint property, with a value of $200,000.00, and with a secured claim of $150,000.00. Amended Schedule C claimed an exemption under M.C.L.A. § 600.5451(1)(o) of $189,000.00, and with a value of $400,000.00, which is consistent with Ms. Monson-Holley's November 20, 2012, filing. Amended Schedule D contained a significant change, changing Christine D'Luge's status from unsecured to a secured mortgage in the Residence, still in the amount of $125,000.00, and further stating this was a joint debt. The Amended Schedule D listed all secured debt as joint.

The Trustee filed an Objection to the Debtors' claim of exemptions as to Ms. Monson-Holley on July 7, 2013, as later corrected on July 22, 2013. On September 8, 2013, the Debtors amended their Schedules, specifically Schedule C, to change from federal to the state exemptions, specifically the Michigan tenancy by the entireties exemption, M.C.L.A. § 600.5451(1)(n), claiming an exemption of "50%" in the Residence, keeping the value at $400,000.00. Debtors assert in subsequent pleadings that such was done to protect their tax refunds and the equity in the Residence. On October 8, 2013, the Trustee filed an Objection to Debtors' amended claimed exemptions, and on July 18, 2014, the Court entered its Opinion and Order Denying the Trustee's Objection to Exemptions, and Vacating a previous Order granting such.

On December 17, 2013, this Court entered an Order granting the Trustee's Motion to Sell the Residence. On December 18, 2013, this Court entered an Order allowing a reduction in the sale amount to allow Debtors the opportunity to repurchase the Residence. On or about December 22, 2013, the Residence was sold by the Trustee.

The Debtors assert that on or about December 22 , 2013, they entered into a one year lease option agreement with the third party purchaser, hoping to repurchase the Residence. It has been approximately seventeen months since this lease agreement was entered into by the parties.

The proceeds from the sale of the Residence were all forwarded to the Trustee, and she is still in possession of all proceeds with the exception of $6,000.00 that was ordered by the Court to be released to Debtors via Order entered on November 26, 2014, after the Debtors filed a Motion to Compel.

The parties agree there are no joint unsecured creditors in this case, and that with the exception of one secured creditor, all secured creditors have been paid.[1] The Trustee filed her Final Report on January 26, 2015, indicating the following:

| | |
|---|---|
| *The Final Report shows receipts of* | $330,698.41 |
| *and approved disbursements of* | $223,155.21 |
| *leaving a balance on hand of:* | $107,543.20 |

According to the Trustee's Final Report, all but $6,056.55 of the allowed secured claims have been paid to date. The Trustee proposes to pay the remaining $6,056.55, as well as $97,734.32 in proposed administrative expenses, leaving a remaining balance of $3,752.33 to be paid pro rata to general unsecured claims totaling $49,067.49, resulting in a proposed dividend to unsecured creditors of 7.6 percent.

On December 10, 2014, Debtors filed a Motion for Reconsideration of the November 26,

---

[1] There exists, however, the indicated $49,067.49 in non-joint unsecured claims, to which the Trustee proposes a pro rata distribution.

2014, Order, and that hearing was held on February 25, 2015. At that hearing, the Debtors raised the issue of whether the Trustee could pay administrative expenses in this case when funds to pay such were generated from the Trustee's administration of an asset for the benefit of secured creditors only. At the conclusion of that hearing, the Court ordered the parties to submit briefs on this issue, and this issue has been fully briefed as of May 5, 2015.

It is the Debtors' position that the Trustee's administrative expenses can only be paid from assets administered for the benefit of unsecured creditors, not for the benefit of secured creditors only. Debtors assert that because proceeds from the sale of the Residence are fully exempt, such can only be used to pay joint secured creditors, not administrative claims.

The Trustee first argues that Debtors do not have standing to object to her Final Report, the context in which this legal issue was raised because this is not a surplus estate, and the only parties who would have standing would be the United States Trustee and creditors. If Debtors do have standing to object, the Trustee argues that there is no prohibition for payment of administrative claims only when secured creditors will benefit.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

The issues in this matter arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, -----U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, No. 12-1200 (U.S. June 9, 2014).

See also *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

Most recently, the United States Supreme Court has determined that so long as the parties knowingly and voluntarily consent, Article III allows bankruptcy judges to adjudicate certain claims. *Wellness Int'l Network, Ltd. v. Sharif*, No. 13-395, 2013 WL 2456619 (U.S. May 26, 2015).

Law and Analysis

11 U.S.C. § 704(a)(1) provides:

> (a) The trustee shall–
>
>> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;"

11 U.S.C. § 724 provides the order for distribution of certain liens:

> **(b)** Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title (other than to the extent that there is a properly perfected unavoidable tax lien arising in connection with an ad valorem tax on real or personal property of the estate) and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—
>
>> **(1)** first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
>>
>> **(2)** second, to any holder of a claim of a kind specified in section 507(a)(1)(c) and 507(a)(2) (except that such expenses under each section, other than claims for wages, salaries, or commissions that arise after the date of the filing of the petition, shall be limited to expenses incurred under this chapter and shall not include expenses incurred under chapter 11 of this title), 507(a)(1)(A), 507(a)(1)(B), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
>>
>> **(3)** third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
>>
>> **(4)** fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

6

12-33873-dof    Doc 361    Filed 05/29/15    Entered 05/29/15 13:59:48    Page 6 of 10

> **(5)** fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and
>
> **(6)** sixth, to the estate.

A trustee has a duty to abandon property under certain circumstances under 11 U.S.C. § 554. Section 554(b) provides that, "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

> The United States Court of Appeals for the Sixth Circuit has set forth guidelines to be considered by bankruptcy courts when facing a motion to abandon. "An order compelling abandonment is the exception, not the rule." Generally, "[a]bandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so." Moreover, "[a]bsent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should very rarely be ordered." In sum, the Sixth Circuit has concluded that "compelled abandonment is not available where administration promises a benefit to the estate."

*In re Heflin*, 215 B.R. 530, 532 (Bankr. W.D. Mich. 1997) (J. Gregg) (quoting *Morgan v. K.C. Machine & Tool Co. (In re K.C. Machine)*, 816 F.2d 238, 246-47 (6th Cir.1987)); *see also In re Bregni*, 215 B.R. 850 (Bankr. E.D. Mich. 1997) (J. Rhodes); *In re Pepper Ridge Blueberry Farms*, 33 B.R. 696, 698 (Bankr. W.D. Mich.1983) ("Congress only intended the abandonment proceeding to be used where there is no question of facts or law involved and for a trustee or debtor in possession to hold assets for no benefit to the estate would unconscionable.").

As to standing, the Court rejects the Trustee's argument. The point of Debtors' position is that if they are correct on the legal issue asserted, such would create a surplus estate by eliminating any administrative expenses sought by the Trustee and her counsel. Thus, Debtors have standing to posit the issue before the Court.

The second issue is whether the Trustee may properly administer an estate asset for the benefit of secured creditors and administrative claims only. The case of *Law v. Siegel*, 134 S. Ct. 1188 (2014), cited by Debtors as authority in support of their position, does not impact this Court's conclusion on this finite issue. The *Siegel* case involved the issue of whether a bankruptcy court can surcharge a debtor's exemption based on a debtor's bad faith conduct. Indeed, this Court applied *Siegel* in holding that the Trustee's objection to Debtors' Amended Exemptions should be denied under applicable state law.

Turning to the issue at hand, the Court has detailed the history of various pleadings filed by the Debtors in this case, including Schedules, amended Schedules, pleadings, amended pleadings, as well as representations made by the Debtors in open court. These changing details concerning the value of, liens on, Debtors' interest in, and exemptions claimed regarding the Residence are what the Trustee has been presented with throughout this case. The Court concludes that the Trustee and her counsel acted appropriately and timely to administer this estate asset, reacting to the various amendments filed by Debtors.

It appears to be Debtors' position that the Trustee should be forced to abandon an estate asset, after the Trustee and her counsel have expended effort and time, resulting in fees and costs, to liquidate the asset, such actions taken in reliance upon the Debtors' own sworn statements concerning the asset. While a court may question and therefore disallow payment of administrative expenses from a trustee's administration of an asset that does not benefit unsecured creditors, and which appears to have the sole purpose of creating a fund for payment of administrative expenses, the Court concludes that such was not the case here.

The Debtors make a point of the fact that no joint unsecured creditors exist. The Trustee

agrees this is currently the case. The Court agrees as well. The Court also agrees with Debtors that if the debts owed to these creditors are not joint, Debtors' interest in the Residence is exempt under Michigan law to the extent such creditors are not joint. This was the finite legal issue before the Court, and the Court decides this issue in favor of Debtors.

However, for purposes of distribution in this case, the joint/non-joint creditor distinction is irrelevant because the question remains whether the Debtors have realized the full benefit of their claimed and allowed exemption, which brings this Court to the bigger issue of whether the Trustee is correct in her position that Debtors' exemption in the Residence has been paid in full by the Trustee allowing Debtors to keep any equity in the Residence when the Court allowed a reduction in the sale amount to allow Debtors the opportunity to repurchase the Residence.

The Trustee sold the Residence in reliance on the Debtors' Schedules and pleadings filed at the time and paid certain joint creditors of the Debtors. The Trustee initially listed such for sale at a much higher price, with the prospect of a significantly higher return to unsecured creditors. The Trustee would not have been compelled to abandon the Residence under the purchase agreement she originally proposed of $451,000, and even under the later agreed to purchase price of $320,000.00, either amount resulting in significant equity for the estate. The Court at one time inquired of the Debtors whether they wished to have the Residence sold at a higher price with the difference paid to them, but they declined that option and choose the route ultimately taken in this case. Thus, if this Court were to consider the Debtors' position as an after-the-fact motion to abandon, and applying the *K.C. Machine & Tool* case, the potential for return to unsecured creditors is the determinative factor, not whether in the end return actually occurred or occurred at a certain level. Clearly, acting upon the Debtors' ever changing

positions at the relevant times, the Trustee's sale of the Residence, and incident incurrence of fees and costs, was appropriate. This is not an exemption surcharge issue, as in the *Siegel* case; rather, it is an equitable issue of laches and the Court's authority under 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . to prevent an abuse of process." Moreover, many parties benefitted by the Trustee's actions, especially joint creditors such as D'Luge, who received funds after having their status changed by the Debtors from unsecured to secured, and the Debtors themselves, who had all of their joint debt paid and given the ability to retain the Residence.

The Court concludes that Debtors have realized the full benefit of their allowed exemption under Michigan law. However, the Trustee shall not make a distribution to t unsecured creditors, as proposed in her Final Report. Any funds remaining in the estate after secured and administrative expenses are paid shall be paid to Debtors.

## Conclusion

For these reasons, the Court holds that the administrative expenses in this case are properly paid from funds generated by the Trustee's sale of the Residence. The Court directs the Trustee to prepare an appropriate order pursuant to applicable local rules.

**Signed on May 29, 2015**

                                                **/s/ Daniel S. Opperman**
                                                **Daniel S. Opperman**
                                                **United States Bankruptcy Judge**